Michael Anikwes-Apolli by David Minchetti Mr. Ludke, you may proceed. Thank you. May it please the Court and Council, my name is Robert Ludke and I represent the a very simple case. The employee in this case was not a traveling employee as a matter of law. The material facts regarding the traveling employee issue are undisputed. Once this Court reaches the conclusion that this employee was not a traveling employee at the time of this accident, the employee's case collapses. The Commission and the employee both state that the employee was required to go to the Town of Cicero City Hall first to download his assignments onto his phone and then pick up the keys for his Town of Cicero vehicle. The employee could not have traveled directly to his first inspection assignment from his residence. The second issue is the Commission was silent about whether or not there was a defect on the stairs. And then finally, if we have time, there are many important policy reasons why the Legislature and the Illinois Supreme Court and this Court require an employment-related risk for compensability and why this case cannot and should not be compensable. Now, in prior, this Court held that a claimant was making a routine and required as a necessary precondition to any subsequent work-related travel. In the instant case, Mr. Enique has slipped on stairs with no defects while making a routine and required stop at his employer's facility as a necessary precondition to work-related travel. Can I ask you a question? Certainly. In prior, that claimant had made no actions in furtherance of his traveling employment status. In your case, he had already gone to his office, he'd already picked up his jobs, and now he's walking down the staircase to get into the vehicle. At what point in time do you contend he actually became, would become a traveling employer when he got in the car? All the cases say a traveling employee is an employee who travels away from his employer's premises to do his job. So I would say when he travels away, when he gets off the premises, because again, what's the reason for having the traveling employee doctrine? Protect them from street risks, protect them from traveling, that kind of thing. Would it be your contention if an individual was truly a traveling employee and went from home directly to his jobs, that if he was injured while walking from his house to his car to go to his jobs, it would not be compensable? Is that your position? No, my position would be as if he is truly a traveling employee, meaning if he had gone to Okay, I'm sorry. There's no question this employee is a traveling employee when he's going out looking for a blighted building. You'll concede that. Absolutely. So now, in this particular case, he'd already gone to the Cicero Village Hall, he'd gone to his office, he got his phone and whatever else he had to pick up, and he got his assignments, and now he's walking down the stairs to go to the car. And your position is he's not a traveling employee until he actually gets in the car and starts going. Is that correct? Absolutely. Yes. Now, I'm going to ask the next question. If an individual were truly a traveling employee, forget about this plaintiff or this plaintiff, if an individual were truly a traveling employee and went from his house directly to jobs for his walking out of his front door and to his car, would that be compensable because he was a traveling employee? Yes, I would say that's consistent with Urban. In that particular case, how is it different than he left his office and was walking down the stairs when he was injured? Because in this particular case, Mr. Blight assignment, he had to go to City Hall first. He had to sync his assignments onto his phone. He had to pick up the keys to the company car. It's like the employee in Venture Newberg. He's a commuter. He goes to a fixed job site. Mr. Nikas goes to a fixed job site. If the Venture Newberg petitioner was told when he got to the fixed job site, oh, by the way, we have other assignments or other construction places that we're working on. We'd like you to go and inspect them here. Download these assignments onto your phone. If you don't do it, you won't know where to go. And here's the keys to the company car. Yeah, but the gist of Venture Newberg is that that employee wasn't a traveling employee at all because he was going to a fixed job site for his employer. He wasn't going to travel at all. In this particular case, there's no question this man was going to travel. The question is at what point in time did he actually become a traveling employee? When he's traveling. Well, that would not be true in my example that I gave you. If a man left his front door and was walking to the car that he was going to use to travel, it would be compensable if he were injured. Yes. I'm sorry. I'm sorry. I was going to say if he has everything he needs to go to his first stop, whether he's a plumber or a blight inspector or a traveling salesman, if he has everything he needs in his car and he's getting in his car to go directly to his first work assignment, then he's a traveling employee when he closes the door. But that's not the facts we have here. In this case, Mr. Enriquez could not have done that. He had to go to his fixed place of employment first. Go ahead. OK, thank you. And then if we have OK, if we have some time, we'll get into the policy reasons. But in prior, in prior, the employee drove to the Belvidere terminal to start his work. And in prior, the employee made the same argument as the employee in this case. He's a traveling employee all the time because his job requires him to travel. And this court in prior held that the claimant did not drive to his various work locations directly from his home. And in the instant case, Mr. Enriquez did not drive to his various work locations directly from his house. The claimant in prior was required to drive to the employer's and then drive the truck to various dealerships from there. In the instant case, Mr. Enriquez is required to drive to City Hall first, download his assigned stops onto his phone, pick up the keys to his town of Cicero vehicle, and then drive to the various buildings to inspect. The claimant in prior was making a regular commute to a fixed job site as a necessary precondition to any work-related travel. In the instant case, Mr. Enriquez was making a regular commute to a fixed job site as a necessary precondition to any such... Hold on a second. Enriquez was not injured as he was commuting from his house to Cicero Village Hall. In prior, the claimant had taken no action in furtherance of his traveling duties, loading vehicles and traveling away and dropping them off. In your case, Enriquez had taken steps to further his traveling duties. He picked up his phones, he picked up his assignments, and now he's walking to get his car, which it occurs to me distinguishes this case vastly from prior. Well, in this case, Mr. Enriquez had not left the premises. He was still at his employer's premises. Oh, okay. So your theory is because he had not left the premises, he had not yet become a traveling employee. Absolutely. That's correct. Yes. All right. The claimant in prior was injured before he embarked on a work trip away from his employer's premises. In the instant case, Mr. Enriquez was... So embarking, to refine this further, embarking on a work trip did not occur when he had his assignments and he proceeded down the stairs with his assignments. That's exactly right. When he's inside City Hall and walking on a non-defective surface in City Hall, he is not a traveling employee. That's correct. He was not traveling away from the employer's premises. Because as we... What if he went to the parking lot and he was injured while unlocking the car? Well, I don't know. Unfortunately, we don't have those facts. I would say that... With the facts of this case, we're trying to get a little further of where your position is. Well, it's close enough to what we could assume he does every day. It's a locked car. He has keys. He has to unlock the car. Well, the policy reasons for the traveling employee doctrine are traveling employees... Hold on a second. What the policy reasons doesn't answer Judge Holdridge's question. The question is, at what point in time do you believe he actually became a traveling employee? After he got his car started and drove away? As he was walking in the parking lot to get the car? At what precise point do you believe he became a traveling employee? I would say when he gets in his car and drives off the premises, then he's subject to street risk. Then he's subject to risks from traveling. Okay. If we say that if he's walking on the sidewalk to the parking lot, or if he's walking in the parking lot, if he's going to be a traveling employee as opposed to someone who is just walking on the parking lot and is not going to be a traveling employee, now you have the situation where you're going to have different results for employees who are doing the same thing. Well, you do have that when you deal with traveling employees and non-traveling employees. We've got building inspectors that merely tripped on a curb as a traveling employee. It's compensable. A normal person would not recover just by tripping on a curb. The Supreme Court has said so. The fact that there is a distinction between non-traveling employees and traveling employees on compensability, I don't think makes the argument, because there is a distinction. There always has been. Well, if there's a curb sticking up in City Hall, that would be a defect. Counselor, I don't think you understand hypothetical questions. Between hypothetical questions and the facts in this case, I just gave you a hypothetical reason why there is a difference between non-traveling employees and traveling employees. Yes, there are. Let me ask just a couple questions. When this claimant was traveling from his home to City Hall, what was he doing? Where was he headed? To City Hall. He's a commuter. Okay. When he left his office with the materials that he needed to do his job, where was he going? Well, he was going down the stairs to go out to the parking lot to get into the Town of Cicero vehicle to commence his work. So he started his travel to do his job as opposed to traveling to his place of employment to pick up his materials, which enabled him to do his job. Well, he is walking out of his office. He has not left City Hall. That's correct. Those facts are undisputed. He is walking down the stairs. He has not left the employer's premises yet. That's correct. I understand that he didn't make it out of the employer's place of business, but I was just more concerned with the journey. Journeying into the building is different, from my understanding, than when he's traveling, journeying out of the building, starting his route to check for blight. Okay. Thank you. Moving on to the second issue. There's no defect on the stairs. And the arbitrator was very specific and went into great deal about how there was no defect on the stairs, and the Commission is silent on the issue. Nowhere in the Commission decision do they mention, we point to this and say that's a defect. The Commission found no defect on the stairs. The witness who was there right after the accident, Ms. Cusper, she testified, no defect on the stairs, no foreign substances, no high spots, no depressions, no trim pieces. The Director of Maintenance, Mr. Wood, no complaints about the stairs. The stairs are cleaned by a crew twice a week. We had an expert engineer, Dr. Roig. He testified it's impossible for condensation to form on the stairs. The temperature of the stairs as the same as the air temperature above and below the stairwell. He tested the coefficient of friction. Mr. Luteke, the red light is on, your time has expired. Would you like to just briefly summarize? Certainly. Going right to the conclusion. The Commission didn't decide that there was a defect on the stairs. There's no dispute of any material facts. The arbitrator specifically found no defects, and the Commission is silent. Okay. The Commission- That's it. You'll have time in reply. All righty. Thank you very much. Yeah. Any questions from the Court or Council? No? No further questions? No, I have a question. I'm sorry. Oh, yes, please, Justice. Why should we construe the doctrine so narrowly? Well, we're not construing it narrowly. In fact, this would be an extension of the Traveling Employee Doctrine, and it would find that just doing something reasonably would be compensable. This Commission decision would find that Brady versus Ruffalo construction is compensable because it's reasonable that the employee would be at the drafting table. See, this decision here, where you take someone who has not yet started his work-related travel, and he's still in the employer's premises, and we now say it's compensable based on a standard of reasonableness, which is no standard at all, this would turn the entire statutory scheme of the Comp Act on end. You now have people walking on flat, no defect surfaces, upstairs, downstairs, on a flat hallway. Now they're compensable because they might be traveling later that afternoon. So that's why this decision, just from a policy standpoint, should not be compensable, and based on existing law, it's not compensable. Thank you. No further questions? Okay, thank you. Mr. Menchete, you may respond. Good morning, Justices. Counsel may please the court. David Menchete on behalf of the appellee Michael Iniguez. On July 2nd, 2018, Michael Iniguez was in the course of his employment as a traveling blight inspector for the town of Cicero when he fell descending the, quote, utility-style staircase, close quote, from his second floor office where he was picking up his assignments. He was going to his employer-provided vehicle in which he traveled to various sites in the town doing inspections. Before he fell, Iniguez had already clocked in by swiping his before regular business hours. He had gone up the utility-style staircase and had done some work. The Workers' Compensation Commission held that under these circumstances, his fall down the stairs was covered under the Workers' Compensation Act, and nothing about the Commission's decision is contrary to the manifest weight of the evidence. And the correct standard of review for this Honorable Appellate Court to use in looking at... Mr. Menchete, let's cut to the chase. At what point in time did he become a traveling employee? So the case law is clear, Your Honor, that a person is a traveling employee when his job activities require... No, no, no. There's no... We all understand that as a blight inspector, when he's out inspecting buildings, he's a traveling employee. My question to you is the same question I asked your opponent. At what point in time did this man become a traveling employee? So, Your Honor, first of all, I would like to say that that question is governed by the manifest weight of the evidence standard. I understand, Mr. Menchete. I understand what the standard is. Just to answer my question, at what point in time, in your opinion, did this man become a traveling employee for compensability purposes? Was it when he left his house? Was it when he got to the back door of Cicero? Was it when he actually entered his office and collected his phone and his assignments at that point in time? Or was it, according to your opponent, when he got in his car and actually went to inspect buildings? At what point in time? It certainly is not what my opponent claims it to be. But at the very latest, right? And that's all you have to decide. It could be earlier than that. In fact, I would argue that the manifest weight of the evidence supports the fact that when he swipes his key card before business hours and clocks in for the day, that that's when he becomes a traveling employee. But it doesn't have to be that early. It can be as late as when he's collected all of his materials and is heading toward the vehicle, which clearly he was in this case. The manifest weight of the evidence clearly supports that. And the case law... What is your response to your opponent's reliance on prior? Well, Your Honor already distinguished prior in the way that I was going to. And I'd like to just say that prior involved a truck driver who was not even at the terminal yet. He was in his driveway putting a personal suitcase into his personal vehicle, and he had not yet even begun his commute to the terminal. So that was how prior was decided. And if you look at prior, paragraph 12 in the prior decision, even in prior, quote, the arbitrator concluded that claimant would be considered a traveling employee from when he arrives at the employer's terminal. And in this case, the equivalent of the employer's terminal is the office in which Iniquis had to go to prepare himself to do his traveling. So I would suggest to you that the latest point at which he would be considered a traveling employee is when he has done all of that preliminary work. He's clocked in and is leaving the building to go to the employer vehicle. So Cicero's argument seems to involve not so much the time as the place where Iniquis was when he critical that he had not left the employer's premises. But there's no case cited by Cicero which stands for the proposition that a traveling employee is not a traveling employee when they are on their employer's premises. In fact, in Flexingate, which is admittedly a rule 23 order, and I only refer it to you because it is extensively briefed by the town of Cicero, it was noted by this court that the commission rejected the employer's contention that the claimant's injuries were not compensable under the traveling employee doctrine because the claimant was injured on the employer's premises. The commission determined that the claimant did not lose his status as a traveling employee merely because the incident happened to have occurred on stairs located in one of the employer's facilities. So theoretically, Mr. Venchetti, you're saying it's the status when you're looking at a traveling employee that's important, not the time and place. The time and place are indicators of whether he was embarking. Well, it goes to the conclusion of status. Correct, but the status is determined by the inference of whether he was embarking. And that's the disputed inference in this case. The disputed inference, which is why it's a manifest way case and not a question of law case, is whether he was embarking. That's probably a more precise word to see when do you assume the status. And clearly it's when you're embarking. And as Justice Barberas has already said, right, it was not so much the journey to the office that made him a traveling employee. It was the embarking on the journey to leave the office that made him a traveling employee. Now, I would argue that he was a traveling employee portal to portal, which is what the case law says. But in this case, the portal may not have been his home, right? The portal may have been his office, and he was embarking from that portal, right? So anyway, the commission decision is not contrary to the manifest way of the evidence. By the way, even if this court somehow decided that it needed to rely on a different theory of compensability, the other theories of compensability that exist in this case are also not contrary to the manifest way of the evidence. So the employment risk theory under McAllister has been extensively briefed by the parties. If there are any questions about that particular analysis, I'll be happy to answer them. But also I'd like to point out to this court the neutral risk analysis, right? Because we all know that a neutral risk that is enhanced quantitatively or qualitatively by the employment circumstances is considered to be compensable. Quantitatively, Inequs was required to leave, to return, to leave the building again at many points during the day, during the course of his workday as a blight inspector. He had to drop things off. He had to pick things up. He had to leave again to go out into the field. He was required to go up and down that utility staircase a number of times per day. That is undisputed, and that's what he needed to do to do his job. That, therefore, quantitatively enhanced neutral risk. Qualitatively, the staircase was called a, quote, utility-style staircase by the employer's own expert. And that's the staircase on which Inequs fell. It was qualitatively different, not only from staircases that are not utility-style staircases, but also from the other They were not as pretty, right? Their own experts said that. Their own experts said they did not have the warnings. Wait a minute, hold on, hold on a second. The fact that it wasn't as pretty, does that establish that the thing is qualitatively different for workers' comp purposes? I mean, I can understand if the risers weren't the same height or the treads weren't the same, or if the staircase didn't have a banister, but the fact that it wasn't pretty? Well, Judge, using the manifest way to the evidence standard, it's not an impermissible inference for the commission to decide that when their own expert says it's not as pretty, that it is qualitatively different, right? Using the manifest way to the evidence standard. It's got to be qualitatively different for purposes of compensability. Well, here's why their experts said it's not as pretty. Those utility stairs did not have warning strips on them like the other staircase. They did not have a non-skid surface like the other staircase. Wait a minute, now hold on a second. You're giving us actual differences between the construction of one staircase versus the other. It's not a question of being pretty. It's, they're missing things. It doesn't have this non-skid surface. It doesn't have warning, but pretty? Pretty is an aesthetic. Oh, okay. But even so, they didn't have those, they were different because they didn't have those strips. They didn't have the non-skid surface. They were painted the same color. So, they were qualitatively different from even the other staircase in that building. In addition, from the qualitative enhancement point of view, Inequs was carrying his work phone in his left hand. And we all know that from the Knox County YMCA case, in and of itself, carrying items can be an enhanced neutral risk from a qualitative point of view. Was he also carrying coffee, I think? Yes, he was. Which hand was he carrying coffee? I believe the testimony was that he was carrying both items, the work phone and the coffee, in the same left hand. Okay. So, in conclusion, the defendant, Appellee Michael Inequs, respectfully requests that this of the circuit court, which confirmed the decision of the commission. Any questions from the court? Are there questions? Thank you, counsel. Counsel, you may reply. Thank you. There are no material facts in dispute. You can decide both issues as a matter of law. You can certainly decide the traveling employee issue as a matter of law. There are no material issues in dispute. Now, counsel talked about the intent. The person is thinking about traveling. That would be an extension of the traveling employee doctrine. When someone who is thinking about traveling, or they're preparing for travel, and they haven't left their house or the employer's face place of business, that would be an unwarranted extension of the traveling employee doctrine, which is what they're asking for here. Now, counsel cited something in the prior case from the arbitrator. You are not bound by the arbitrator's interpretation of the law. The Supreme Court and the reported appellate court decisions in this court says a traveling employee has to be traveling at the time away from the employer's premises. Let me stop you there for just one second. Mr. Manchetti had mentioned this claimant returned to the city hall numerous times during the day out of necessity. He had to bring things back. I'm not sure exactly what the things were, but after going to one or two job sites, he'd stop back at his office and then go back out. He alleged that on occasion, but the commission made no finding about that. In fact, the petitioner testified that after this accident, he didn't walk on those stairs at all. He avoided it. He took the elevator. There are two other stairs that he could have taken, and he did take those. So he testified after the accident, I avoided those stairs. I'm not interested in the stairs. My point for my question was this. After he had been to, say, the first inspection site and then needed to go back to his office, on his way back to his office, let's say he gets there, gets out of his car and trips in the parking lot, going back to his office. In your understanding, is he a traveling employee then? Well, I think he could be. If he's not going back for some other reason, if he's a traveling employee for the first time, and then he goes out and does this job, and he has to go back to City Hall for a work-related reason, and then go back out, I think it's certainly possible he could be a traveling employee the whole day, if that is what he is doing the whole day. This case is factually dissimilar. Okay, so in other words, as long as he has started his day traveling, then going back to his place of employment has less significance at that point. Yeah, if he had started his workday, if he had started his traveling, if he had left the employer's premises, done a few things, had to come back for a work-related reason, pick something up and go back out again, yes, he could be a traveling employee at that point. Now, thank you. Counsel was asked about time and place, and I think that falls under Allenbaugh. In Allenbaugh, you have an officer who is a traveling employee, and this court found it is not compensable because at the time this accident occurred, he was not a traveling employee. What was he doing in Allenbaugh at the time the accident occurred? Are we having trouble? No, I can't see you now. Yeah, what was he doing in Allenbaugh at the time the accident occurred? He was commuting. He was commuting from where to where? I want to say he was going from his house to a police station for a seminar, but I'm not real sure about that. But I do recall the holding that in Allenbaugh, even though he's traveling all the time and may have even been a traveling employee that later that day, at the time of the accident, he was not a traveling employee. Is it possible for an employee to be a traveling employee sometimes while he's working and not a traveling employee at other times? Absolutely, absolutely. If I'm here in my office, I'm not a traveling employee, but if I'm going to go to a clinic later this afternoon and depose a doctor, then later this if I walk down the hall today, right now, after we're done here to the copy machine, and I'm walking on a clean, flat surface, and I trip and break my ankle for no reason, it's an unexplained fall, counsel would have you believe that I'm a traveling employee. We can't have that. And that's not what the Supreme Court says. It's not what McAllister says. And it's not the statutory scheme to have people who are at their normal place of work to somehow have compensable accidents where there's no employment-related risk. Now, counsel was talking about qualitative and quantitative risk. The commission made no finding of any qualitative or quantitative risk. He did not have to go up and down the stairs all the time. There was no finding that he did so. There was certainly no finding of any defect. And now, for the first time in front of the appellate court, counsel argues, well, maybe it was his cell phone. And the record is replete with petitioner's theories as to the cause of the accident. He never alleged— Mr. Lutke, your time is up. Are there any questions from the court? I'm not. No? Okay. Very good. Well, thank you, counsel, both for your arguments in this matter this morning. It will be taken under